## NOAH S. HART

### *v.*

### JOHN S. SCHENCK and wife and others.

A complainant, under a judgment at law, had levied on certain property which was claimed by the defendant's wife. He thereupon filed a creditor's bill, alleging that if the title to the property had been conveyed to the wife, it had been done to defraud defendant's creditors. The wife answered, averring that the property was absolutely hers, by

gift from her uncle, for the consideration of natural love and affection, and denied all fraud &c.—*Held*, that she could not afterwards set up, by the proofs, that complainant himself was implicated in the fraud (if any had been proved) by which the property, being her husband's, was transferred to her by voluntary conveyance to keep it away from his creditors; no such allegation being made in the answer.

Creditor's bill.   On final hearing on pleadings and proofs.

*Mr. J. S. Aitkin*, for complainant.

*Mr. B. Gummere*, for defendants Schenck and wife.

THE CHANCELLOR.

The bill states that on or about January 30th, 1869, the complainant and the defendant John G. Schenck made a settlement of their business dealings, and the former was found to be indebted to the latter in the sum of $1,600, for which he then gave to the complainant his note of that date, payable on the first day of May, 1871, with interest; that Schenck, when he gave the note, was possessed of property enough to pay it; that his wife had then no property, and has not since then inherited or received any from any source; that on or about March 16th, 1872, Schenck purchased for himself a hotel property in Belvidere, described in the bill, for $7,700, but caused the conveyance thereof to be made to his wife; that they together gave a mortgage on it for $2,000 of the purchase-money, and that the balance was paid by Schenck, who, shortly after the purchase, entered into possession of the property, and carried on the business of a tavern-keeper there in his own name. It further states, that the complainant began suit on the note, January 19th, 1875, and recovered a judgment, June 6th, 1876, for $2,488.21, damages and costs, under execution on which the sheriff of Warren county levied on all Schenck's right, title and interest in the property. It further alleges, that on or about January 15th, 1876, Schenck executed a deed of conveyance,

for the consideration, as expressed therein, of $1,500 (but really without consideration, and merely to defeat the complainant, his creditor), to Abraham B. Randolph, in trust for Garret Schenck, the minor child of Schenck and his wife, for Schenck's right, title and interest in and to the property; that the deed to Schenck's wife was not recorded until January 18th, 1876, and was then left for record at the same time as the deed to Randolph, and that Schenck has no property, except the hotel property, out of which the complainant can collect his judgment. It prays that it may be decreed that Schenck's wife holds the property in trust for him; that the judgment may be decreed to be a lien on it; that the deed to Randolph may be set aside, and that the property may be sold to pay the judgment.

The defendants have answered separately. Mrs. Schenck, by her answer, admits the giving of the note, but denies that Schenck was, when the note was given, possessed of property to pay it. It alleges that she then possessed, in her own right, a bond and mortgage of $7,000, and that, in view of that fact, the complainant (who is her brother) requested her to sign the note, with her husband as surety; which she did. She admits that she has, since then, neither inherited nor received any other property than the bond and mortgage and the proceeds thereof. The answer states that on the 27th of January, 1869, her uncle, George H. Hart, was the owner of the bond and mortgage (the mortgage was upon property known as the State Street House, in Trenton), and then, for the consideration of natural love and affection, gave and assigned them to her, to her separate use, with the knowledge and approval of the complainant, and that she held them until she parted with them as part of the purchase-money of a farm in Mercer county, which she bought and held until February, 1871, when she exchanged it for a house and lot in Trenton, receiving, as part of the consideration for the farm, two bonds and mortgages, one for $2,000, and the other for $3,000; that on the 24th of February, 1872, she sold the house and lot in Trenton, and

received as part of the purchase-money a bond and mortgage for $3,700; and that all of the securities which she held were the proceeds of the bond and mortgage of $7,000. She further says, that she bought the Belvidere property for $7,700, of which $2,000 were secured by mortgage on that property, and the rest was paid by the bonds and mortgages above mentioned for $2,000 and $3,700 respectively, owned by her.

Schenck's answer admits that he gave the note, and that judgment was recovered on it, but denies that he was, when the note was given, possessed of property enough to pay it, and says that he had none. It alleges that his wife had a separate estate, and that the Belvidere property was bought with her money, for her use, and also says that the deed to Randolph as trustee, was intended to pass only his possible estate by the curtesy in the property.

The evidence shows, beyond all question, that the bond and mortgage for $7,000 were really the property of Schenck when they were assigned to his wife; that George H. Hart, her uncle, held them in secret trust for him as part of the proceeds of the sale of the State Street House, which had belonged to Schenck, and had been conveyed to Hart, to be held on such trust for him. Schenck conveyed that property to the complainant in 1860, and he held it until 1863, when he conveyed it to Hart to be held on a trust, expressed merely orally, for the benefit of Schenck; Hart agreeing to see that the complainant was protected against his then existing liability as surety for Schenck. He was to sell the property and to pay to Schenck any surplus of the proceeds of the sale which should remain after satisfying the claims for which the complainant was surety. Hart sold the property, and took a mortgage of $7,000 as part payment. Schenck was anxious to have that mortgage, but Hart was unwilling to assign it to him until a settlement had taken place between the complainant and Schenck, and the complainant, who claimed that Schenck owed him a considerable sum of money, was unwilling that it should be assigned to Schenck before

a settlement had been made. They came to a settlement, and the note for $1,600 was given by Schenck to the complainant for the amount then found to be due to him. The note (it was given January 30th, 1869) was made payable on the 1st of March, 1871, which was the day on which the mortgage for $7,000 would become due. When the note was given, it was agreed between the complainant and Schenck and his wife, that the mortgage should be assigned to Mrs. Schenck (the complainant was unwilling that it should be assigned to Schenck himself), and that she should sign the note as surety, and should pay the note out of the mortgage money when it became due, and to that end the note was made payable on the day when the mortgage would become due.

The statement in Mrs. Schenck's answer, that the $7,000 bond and mortgage were assigned to her for the "actual and true consideration of natural love and affection," is not sustained by the proof. It is contradicted even by her own testimony. She says she went with the complainant to Philadelphia, after the settlement, to get the assignment; that he requested her to go, and that she went, for the purpose of getting it. She says she signed the note as security, and that she had no property at that time (in her answer she says that she then had the $7,000 bond and mortgage in her own right), and does not know that she had any expectation of any; that she knew that her husband was entitled to some money coming to him from the State Street House; that on the day of the settlement between the complainant and her husband, she heard her husband demand that the $7,000 mortgage should be given to him; that he claimed it as his; that the complainant refused to give the mortgage to her husband and gave it to her, and that after he got the note, and before he and she started for Philadelphia, he said he was not going to give the mortgage to her husband but was going to give it to her. Her husband says that the $7,000 mortgage was to come to him, and that he has, time and again, demanded that it should be

transferred to him, but it was not done; that the terms of the settlement between him and the complainant were, that he was to give the latter his note for $1,600, and the complainant was to give him the $7,000 mortgage and the balance of money in George H. Hart's hands; that after the note was signed and delivered into the complainant's possession, he (Schenck) was to have the $7,000 mortgage; that then the complainant told him he would not give it to him, and said he was going to give it to his (Schenck's) wife; that he protested against it; that he wanted it himself; that it was his. It will be seen that both her statement and her husband's contradict the statement of her answer that the bond and mortgage were given to her by her uncle, George H. Hart, in consideration of natural love and affection. They were assigned to her as her husband's property, and because they really belonged to him.

There is other evidence from her own admission that the Belvidere property belongs to her husband. Her father testifies that she told him once or twice that that property was bought with her husband's money. Her sister testifies that when the complainant requested Mrs. Schenck to secure his claim, saying that she could, if she was disposed to do so, she replied that she had nothing—that the money was her husband's; that it would not do for her to dispose of the property unless he was willing, and that he was the one to whom the complainant should go.

The complainant, referring to the occasion of which those witnesses speak, says that Mrs. Schenck said that she could not pay him without her husband's consent; that it was his money; that she had none of her own; that the property was all her husband's, and that she had to do just what he said.

It is urged by the defendants' counsel that the complainant does not come into court with clean hands; that he is implicated in the fraud of Schenck, out of which the complainant's claim arose; that he took title to the property of

Schenck to keep it away from the creditors of the latter, and therefore is not entitled to relief.

The complainant and Schenck appear to have made a general settlement of all their mutual claims (and there appear to have been claims on other accounts than that of the State Street House) when the note for $1,600 was given, and the note was the result of such general accounting. But it is enough to say on that point, that the answers set up no such defence to the complainant's demand, but merely claim that the property on which he has caused his execution to be levied is the separate property of Mrs. Schenck, and not in any way the property of her husband.

The rule is fully established, that the court cannot notice matter, however clearly proved, of which there is no allegation in the pleadings. *Gresley's Eq. Evidence 232; Chandler* v. *Herrick, 3 Stock. 497; Van Sciver* v. *Bryan, 2 Beas. 434.* There will be a decree for the complainant.